## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Jane Roe #1, individually and as the parent and next friend of Jane Doe #4, a minor under the age of eighteen (18),<br><br>Plaintiffs,<br><br>vs.<br><br>The United States Figure Skating Association, Flight Fit N Fun Irmo, LLC D/B/A Plex Indoor Sports D/B/A Flight Fit N Fun Flight Holding Company, LLC, The South Carolina Skating Club f/k/a Palmetto Skate Club, Angi Grant and Mark Cockerell,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:24-cv-910-JDA<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

**TO:    DEFENDANTS AND THEIR COUNSEL:**

Plaintiff Jane Roe #1 and Jane Doe # 4, complaining of Defendants, respectfully shows unto this Court and alleges as follows:

### SUMMARY OF ACTION

**1.**    The sport of figure skating in the United States is regulated in part by The United States Figure Skating Association ("USFS").

**2.**    Beginning when she was twelve (12), in January 2020, Jane Doe # 4 began taking figure skating Lessons at a rink in Irmo, South Carolina (Flight Fit N Fun Irmo, LLC D/B/A Plex Indoor Sports D/B/A Flight Fit N Fun Flight Holding Company, LLC – hereinafter, "FFF").

**3.**    While at this skating rink in Irmo, Plaintiffs Jane Roe #1 and Jane Doe # 4 were introduced to a coach named Mark Cockerel (hereinafter, "Cockerell")

**4.**    Mark Cockerell is a former Olympian who was working as an employee of FFF.

**5.** Cockerell was certified as a skating coach by USFS, the group responsible for facilitating qualified and certified coaches to participate in figure skating in the United States, monitoring the activities of certified coaches, and providing guidelines and oversight for the safety of skating participants.

**6.** In 2020, The South Carolina Skating Club f/k/a Palmetto Skate Club (hereinafter "SCFSC") and their lawyer president Angi Grant were aware of many complaints against Cockerell but continued to support him as a coach for minor athletes at the rink in Irmo.

**7.** Many of the participants in figure skating are under the age of eighteen (18) when they begin the sport.

**8.** Children comprise a large segment of active figure skaters in the United States.

**9.** The Plaintiff Jane Doe # 4 was under the age of eighteen (18) at all times interacting with Cockerell.

**10.** During his time as a coach, Cockerell groomed, touched, emotionally abused, and acted inappropriately with Plaintiff Jane Doe #4.

11. All defendants in this matter were complicit in allowing the perpetration of the hiring, supervision, interaction, escalation, grooming, exploitation, harassment, and abuse of Plaintiff Jane Doe #4 in this case.

12. When used in this complaint, "sexual misconduct" is a comprehensive term that includes grooming, exploitation, sexual abuse, sexual harassment, and sexual malfeasance.

13. When used in this complaint, "emotional abuse" is a comprehensive term that occurs when a coach continuously criticizes an athlete, uses sarcasm, name-calling, beratement, belittling and disparaging remarks toward the athlete, imposes inappropriate expectations that are beyond the developmental capability of a young athlete, or acts to isolate an athlete from normal social interactions.

14. In addition to preventing sexual misconduct and emotional abuse during the relevant timeframe, USFS, FFF, SCFSC and Grant had a duty to monitor, supervise, and conduct appropriate background searches and investigations into employees and agents, including coaches, and to protect minor

participants from potential harm and actual harm perpetrated by employees and agents of FFF who had a clear propensity for sexual misconduct or emotional abuse.

15.    Plaintiff was the victim of sexual misconduct and emotional abuse by Mark Cockerell at FFF and facilitated by USFS, FFF, SCFSC and Grant  during all times referenced in this complaint.

16.    Plaintiff has suffered immeasurable harm and will likely have to undergo psychiatric/psychological care for the remainder of her life

17.    Defendants USFS, FFF, USFSC and Grant   acted in dereliction of their duties by failing to adequately monitor and police against the harm perpetrated by Cockerell.

## PARTIES

### Plaintiffs

18.    Plaintiff Jane Roe #1(hereinafter, "Roe")  is the mother, guardian, and next friend of her minor daughter Jane Doe #4.

19.    Plaintiff Jane Doe #4 (hereinafter, "Doe #4") was a minor while  interacting with Cockerell, skating at FFF and being a member of USFS and SCFSC.

20.    Jane Roe #1 and  Doe #4 are citizens and residents of Greenville County, South Carolina.

21.    Plaintiffs are filing this action anonymously under the pseudonyms Jane Roe #1 and Jane Doe #4 because the subject matter of this lawsuit could bring embarrassment and publicity to the Plaintiffs and/or their  family.

22.    If Plaintiff Jane Roe #1 is forced to divulge her identity, it will likely result in identification of her minor child, Jane Doe #4

23.    Plaintiff Jane Doe #4 is uniquely vulnerable to the mental or physical harms of disclosure of her identity since she is a minor under the age of eighteen. (18)

24.    Plaintiff Jane Doe #4 risks humiliation and embarrassment if she is identified since some of her allegations involves descriptions of intimate activity and allowing her to proceed with a pseudonym brings her comfort.

25.     If the ability to proceed with a pseudonym is not allowed, the Plaintiffs will experience further harm because of exercising her legal rights.

26.     If Plaintiffs are forced to disclose their identity, that disclosure will amplify the injuries that are at issue in this litigation.

27.     The public interest in the disclosure of Plaintiff' Jane Roe # 1 and Jane Doe #4's identities is minimal and not outweighed by the substantial harm of revealing their identities.

28.     There will be no furtherance of justice by requiring the public disclosure of either Plaintiff Jane Roe # 1 or Plaintiff' Jane Doe #4.

29.     Once the Defendants are served and retain counsel, Plaintiffs' identities will be revealed to Defendants in a confidential manner, if not already known.

30.     Defendants are not prejudiced by allowing Plaintiffs to proceed anonymously, and any potential prejudice will be mitigated by the confidential disclosure of Plaintiffs' actual identities.

**Defendant USFS**

31.     Defendant, The United Skates Figure Skating Association ("USFS"), is an organization created under the laws of the State of Colorado, having its principal place of business in Colorado Springs, Colorado.

32.     USFS is National Governing Body ("NGB") of Figure Skating, under its charter given by the United States Olympic Committee under the Ted Stevens Amateur Sports Act ("TSASA").

33.     As the NGB for Figure Skating, and as a condition of maintaining its charter with the USOC, USFS is mandated to provide adequate training, supervision, and security to protect the thousands of minor and young-adult member-athletes in U.S. Figure Skating from the ravages of sexual abuse, emotional abuse, physical abuse, and other misconduct.

34.     Specifically, USFS is required to provide supervision, safety, and security at its events as well as ensure that its members, including its child members, are safe from sexual abuse and other misconduct.

35.     USFS has conducted substantial, continuous, and purposeful business activities in the State of South Carolina by holding events throughout the State of Carolina and credentialing coaches whose primary state is South Carolina.

36.     USFS has member clubs in the State of South Carolina.

37.     USFS has a Chairperson mandated to ensure compliance of member clubs; with the SafeSport safety guidelines it purports to abide..

38.     USFS actively recruits young figure skaters from the State of South Carolina to attend competitions sponsored by and endorsed by USFS.

39.     USFS receives a constant source of funding from members of USFS in the State of South Carolina.

40.     At all relevant times, Jane Roe # 1 was a paying member of USFS and Defendant USFS was aware that Jane Doe # 1's primary location was South Carolina.

41.     As the NGB for figure skating in the United States, USFS adopted a membership program, whereby individuals register with USFS, undergo training from USFS or certified coaches and agree to abide by the USFS rules/regulations, to compete or otherwise participate in USFS sanctioned events.

42.     The general team "member" at USFS includes several different classes of membership, including coaches, and figure skaters.

43.     USFS has a hearing panel composed of USFS management agents that review complaints made to the board about an USFS Coach or member.

44.     Through its powers under USFS guidelines, the hearing panel is permitted to impose nation-wide discipline against any offending USFS coaches or members, including but not limited to admonishment, suspension, permanent life ban, and other reasonable conditions.

**Defendant FFF**

45.     Defendant Flight Fit N Fun Irmo, LLC D/B/A Plex Indoor Sports D/B/A Flight Fit N Fun Flight Holding Company, LLC ("FFF") is a corporation, organized under the laws of one of the States of the

United States and owns and operates an ice-skating rink in Irmo, South Carolina.

46.     Defendant FFF employed Mark Cockerell at all times alleged in this complaint.

47.     Defendant FFF appointed Mark Cockerell as the skating rink director owned by FFF.

48.     Defendant FFF is responsible for all actions of Mark Cockerell including by virtue of allowing Cockerell to acquaint himself with Plaintiff through his directorship and coaching at the ice-skating rink owned by FFF.

49.     Upon information and belief, at the time he became an employee of FFF, Mark Cockerell had been the subject of prior complaints against him from previous coaching employment.

50.     Had FFF done a proper investigation, Cockerell should have been precluded from employment working with minor athletes.

51.     Defendant FFF is an entity that employs and retains agents, servants, volunteers, and coaches that interact directly with minor children and young adults as an ordinary course of their responsibilities.

52.     Moreover, Defendant FFF expressly permits adult coaches to coach and interact with minor participants upon its premises, and it was foreseeable that adult coaches would interact with minor children.

53.     As such, all of Defendant FFF's employees, agents, volunteers, coaches, servants, and members are mandated reporters under South Carolina Law and have a legal obligation to report suspected emotional, physical, and sexual abuse of minors.

54.     The actions and omissions complained of occurred by and through the employees, agents, authorized representatives and/or officers and directors of FFF acting in the course and scope of their authority and/or with the knowledge of FFF.

**Defendants SCFSC and Grant**

55.     South Carolina Figure Skating Club (SCFSC), formerly known as Palmetto Skate Club (PSC), is the only official figure skating club in the Midlands of South Carolina.

56.     SCFSC is an organization with a mission to provide guidance and opportunities to its members, while engaging in the sport of figure skating.

57.     SCFSC is located in Lexington County, South Carolina.

58.     Ani Grant was the president of SCFSC or an agent of SCFSC at all times relevant in this complaint

59.     Angi Grant, upon information and belief, is a citizen and resident of Lexington County, South Carolina.

60.     SCFSC and Grant promoted the FFF rink and its coaches on their website.

61.     SCFSC and Grant are involved in figure skating activities and coaches actions and inactions at the FFF rink.

62.     SCFSC interacts with USFS to ensure safety of minor figure skating participants for members of its club and skaters at the FFF rink.

63.     SCFSC openly advocates for skaters or their families to bring complaints against the rink or coaches to the club or its president Angi Grant to ensure their sport of figure skating is conducted in a safe and proper manner

64.     The actions of SCFSC created duties and responsivities of the club and Angi Grant to its members and minor figure skaters at the FFF rink.

65.     Angi Grant is the president of SCFSC and was complicit in all action by SCFSC in protecting Mark Cockerell as a coach at FFF.

66.     Upon information and belief, SCFSC and Grant provided Cockerell cover in the face of actual complaints against him, which allowed Cockerell to continue his illicit contact and emotional abuse of minor figure skating athletes like Jane Doe #4.

**Defendant Mark Cockerell**

67.     Plaintiff is informed and believes that Defendant Mark Cockerell is an individual who currently resides in the State of Nevada.

68.     At all times herein alleged, Cockerell was a coach, mentor, member, employee, and advisor to Plaintiff Jane Doe #4 in Irmo, South Carolina.

69.     The acts and omissions committed by Cockerell against Jane Roe # 1 and Jane Doe # 4 occurred primarily in the state of South Carolina.

**Duties/Roles of Defendants**

70.     During the time that Plaintiffs Jane Roe #1 and Jane Doe #4 interacted with Cockerell and Jane Doe #4 was coached by Cockerell, he was a member of USFS, certified as a coach by USFS and subject to USFS's rules/regulations, and required to comply with USFS' rules/regulations concerning interaction with minor and young adult athletes.

71.     During the time that Cockerell interacted with Plaintiff Jane Roe #1 and Jane Doe # 4, he was an employee of FFF and subject to supervision, monitoring, training, and policies and procedures of FFF.

72.     FFF is a member organization of USFS.

73.     SCFSC and its president Angi Grant were members of USFS at the time of the events set forth in this complaint.

74.     USFS allowed member skate clubs (such as SCFSC) to promote figure skating in their markets and delegated certain types of rulemaking and policy enforcement to member clubs like SCFSC.

75.     Clubs like SCFSC then was supposed to carry out its mission of protecting its athletes (many of them minor) through their representatives like their president Angi Grant.

76.     The duties by USFS to member clubs (like SCFSC) did not obviate the need for USFS to continue diligently performing its essential function of promulgating the mandatory safety rules, codes, policies, procedures, and guidance related to figure skating , or to properly govern its members.

77.     Rather, Defendants USFS, FFF, SCFCS and Grant, acting separately and together, have the rights and responsibilities to direct and control the way their employees and/or agents provide services for coaching and safety in ice skating and further have a duty to protect minor children and young adults engaged in ice skating.

78.     Defendants USFS, FFF SCFSC have the right or power to direct and control the way their

employees and/or agents hire, retain, monitor,  supervise, and train staff under their employment or agency.

79.    Upon information and belief, Defendants USFS, FFF and SCFSC have rules, regulations, policies, procedures, and guidance on how adult members must interact with youth members, including how to prevent sexual misconduct, emotional abuse  or child exploitation and have knowledge of how to prevent known sexual predators from harming participants in their ice-skating programs.

80.    Upon information and belief, Defendants, USFS, and SCFSC FFF have or should have rules, regulations, policies, procedures, and guidelines related to hiring practices, screening practices, and employee supervision upon hiring, which includes, at a minimum reasonable background checks and investigations, given the fact that any adult who works on behalf of USFS, FFF or SCFSC will interact with children.

81.    Defendants USFS, FFF and SCFSC have a non-delegable duty to provide employees and/or agents with adequate knowledge and training to prevent sexual misconduct, emotional abuse and/or  child exploitation occurring within their ice-skating programs.

82.    Before the events underlying this case, which occurred beginning in 2020,  employees and/or agents of Defendants USFS, FFF and SCFSC had actual knowledge that Cockerell had been inappropriate with children or young adults under his coaching or mentorship.

83.    Before the events underlying this case began in 2020,  Defendants' USFS, FFF and SCFSC employees and/or agents had actual knowledge that a vulnerable population of children or young adults would be subject to sexual misconduct, emotional abuse, and exploitation if reasonable precautions were not exercised in hiring, supervision, monitoring training, and employment of qualified coaches, employees and/or agents.

84.    USFS, FFF and SCFSC employees and/or agents had the opportunity to prevent the harm against vulnerable children, and yet, Defendants USFS, FFF and SCFSC engaged, certified, and employed coaches, including Cockerell, who were likely to engage in sexual misconduct, emotional abuse and to exploit children and young adults.

85.    At all times relevant hereto, the coaches, employees and/or agents  of Defendants USFS, FFF

and SCFSC (with respect to the facts alleged herein) acted within the course and scope of their employment and/or agency with Defendants USFS, FFF and SCFSC.

86.     Defendants voluntarily undertook the duty of providing supposed "safety features" to prevent sexual misconduct, emotional abuse, and exploitation of minor children athletes prior to the events in this case.

87.     Defendants USFS, FFF, SCFSC and Grant  knew that minor children and young adults exposed to sexual misconduct, emotional abuse or exploitation were at risk of unfathomable harm and knew that if children were sexually abused, emotionally abused, or exploited, these children would sustain lifelong emotional harm and behavioral difficulties.

88.     The negligent, grossly negligent, reckless, willful, or wanton acts, omissions, and liability of Defendants includes that of their agents, principals, employees, and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency, and/or respondeat superior.

## JURISDICTION AND VENUE

89.     The United States District Court for the District of South Carolina has jurisdiction over this case pursuant to  28 U.S.C. §1331.

90.     At least one Defendant is located in Irmo, South Carolina in Lexington County, and a primary portion of the facts alleged occurred in Irmo, South Carolina.

91.     Each and every Defendant interacted with South Carolina in a systemic and pervasive way, such that this Court may exercise personal jurisdiction without offending the notions of justice.

92.     The Richland Division of the United States District Court for the State of South Carolina is therefore the proper federal division for this action.

## JOINT AND SEVERAL LIABILITY

93.    The above-named Defendants are jointly and severally liable for all damages alleged herein since their negligent, grossly negligent, reckless, and wanton acts and omissions, singularly, or in combination, are the contributing proximate causes of Plaintiffs' injuries, damages, and losses.

## FACTUAL ALLEGATIONS SUPPORTING THE CAUSES OF ACTION

### USFS IS THE NATIONAL GOVERNING BODY FOR FIGURE SKATING YOUTH SPORTS ORGANIZATIONS IN THE UNITED STATES

94.    USFS  is recognized as the NGB for the sport of figure skating in the United States by both the United States Olympic & Paralympic Committee (USOPC) and the International Skating Union (ISU).

95.    As the NGB of U.S. Figure Skating, USFS has a duty to create policies and procedures, certify coaches properly, and create a culture of safety for all participants in U.S. Figure Skating.

96.    NGB's are in the position to advocate and ensure safety for Youth Sports Organization ("YSO")  participants because they receive money through membership and other ways.

97.    The YSO is the supposed beneficiary of the NGB of its sport.

98.    If the NGB fails in its mission, it places children and young adults at risk of physical and emotional harm.

99.    An entity recognized as an NGB for a YSO has certain responsibilities and authority.

100.    As the NGB for figure skating, Defendant USFS is supposed to fulfill its role in creating a safe environment for minor and young adult figure skaters in the following manner:

      a.    Regulating the Sport: USFS is responsible for setting the rules and standards for figure skating in the United States.

b.    Organizing Competitions: USFS hosts national figure skating competitions, including the USFS Championships, and is responsible for selecting and sending U.S. athletes to international competitions, such as the World Championships and the Olympics.

c.    Athlete Development: USFS plays a significant role in athlete development. It identifies and nurtures young talent, provides training guidelines, and supports athletes at various levels.

d.    Coach Education and Certification: The organization is responsible for the certification and education of coaches. It ensures that coaches have the necessary skills and knowledge, including continuing education, to train athletes effectively and safely and without the risk of permanent injury.

e.    Promoting the Sport: As the NGB, USFS also works to promote the sport of figure skating on a national level, increasing its visibility and encouraging participation at all levels.

f.    Membership Management: The organization manages memberships for skaters, coaches, and officials. Membership often includes insurance coverage, access to competitions, and other resources. In addition, Membership should include continuous and repetitive monitoring to ensure that adult participants remain eligible to interact with minor athletes.

g.    Ensuring a Safe Sport: U.S. Figure Skating is responsible for ensuring that the sport is safe for all participants. This includes implementing policies and procedures to prevent and address issues such as sexual abuse and harassment, in line with the U.S. Center for SafeSport guidelines.

h.    Fundraising and Sponsorship: The organization also handles fundraising and sponsorship to support its activities, athletes, and events.

101.    As the NGB of U.S. Figure Skating, USFS has the authority to represent and make decisions for the sport of figure skating in the United States and  international forums.

102.    The organization's role is crucial in maintaining the standards of the sport, supporting athletes, and ensuring the safety and integrity of figure skating.

103.    One of the most important (if not the most important) roles of an NGB is the protection of its youth participants.

104.    Children are a vulnerable population.

105.    As such, children are foreseeable  potential victims for predatory adults if a NGB fails to perform its essential functions..

106.    For at least three decades, NGBs have been on notice that youth sports provides a breeding ground for pedophiles and predatory coaches.

107.    Preventing sexual misconduct, emotional abuse and exploitation of children and young adults in YSO's is a critical and well-established responsibility of any NGB.

108.    Because of the well-understood nature of the risk to children when an NGB fails to perform its essential function, policies, procedures, and guidelines have existed for decades to guide NGBs and similar organizations in their protective mission.

109.    These policies, procedures, and guidelines developed and honed over at least three decades are standard practice and the minimum level of protection that a functional NGB should implement.

110.    One of the most fundamental  ways that an NGB can help protect children is by preventing unqualified adults from participating in the sport or becoming coaches in the sport.

111.    Qualified to be a member coach or participating adult in the sport of figure skating means the ability to interact with minor athletes or young adult athletes in a  way that does not harm them emotionally or physically or exploit them in some way.

112.    Typical measures an NGB undertakes to ensure the ouster of unqualified adults or coaches  include:

    a.    Background Checks: Conduct thorough background checks on all coaches, volunteers, and staff. This includes criminal background checks and checks against sex offender registries.

    b.    Training and Education: Provide mandatory and continuous training for all coaches, volunteers, and staff on recognizing and preventing sexual abuse. This should also include educating them on appropriate boundaries and behaviors.

c.    Policies and Procedures: Develop and enforce strict policies regarding interactions between adults and athletes. This may include rules about one-on-one interactions, travel, and communication outside of practice times.

d.    Safe Sport Programs: Implement a Safe Sport program, which is designed specifically to protect athletes from abuse in sports. This includes policies, procedures, and educational components.

e.    Reporting Mechanisms: Establish clear and accessible reporting mechanisms for athletes, parents, and others to report any suspicions or incidents of abuse. Make sure there are multiple ways to report, and that the process is confidential.

f.    Responding to Reports: Have a clear plan in place for responding to reports of abuse. This should include an immediate response to ensure the safety of the child, an investigation, and involving law enforcement when necessary.

g.    Parent and Athlete Education: Educate parents and athletes about the risks of sexual abuse in sports, signs to look out for, and how to report concerns. Empower athletes to speak up.

h.    Monitoring and Supervision: Ensure adequate supervision during all team activities, travel, and events. Regularly monitor interactions between coaches and athletes.

i.    Limiting One-on-One Interactions: Implement policies that limit one-on-one interactions between adults and children, such as having meetings in view of others or leaving doors open.

j.    Regular Review and Updates: Regularly review and update policies and training programs to ensure they reflect the latest best practices in child and young adult protection.

113.    An NGB is responsible not only for having these protective measures but also for implementing them to ensure the culture of the organization prioritizes the safety and wellbeing of its minor and young adult athletes, including Jane Doe #4.

114.    Collaboration with child protection experts and law enforcement can further strengthen these efforts.

## A YSO IS AN ORGANIZATION THAT EMPLOYS COACHES AND HAS DUTIES TO PROTECT ITS MINOR AND YOUNG ADULT ATHLETES

115.    A YSO is a structured entity that provides athletic activities for minors and young adults.

116.    These organizations can range from local community-based clubs to larger, more competitive leagues and associations.

117.    A YSO's primary purpose is to offer organized sports to young people, and typically serves ages ranging from about 5 to 18 years old.

118.    YSO's typically offer structured sports programs in one or more sports, such as figure skating, soccer, basketball, baseball, gymnastics, swimming, track and field, and many others.

119.    These programs are usually divided by age groups and skill levels but can sometimes mix ages based upon skills and other criteria.

120.    Mixing age ranges can increase the risk of harm to minor children, for instance, when a child is paired with an adult.

121.    YSOs focus on developing athletic skills, understanding the sport, and physical fitness among young participants.

122.    Many of these organizations arrange or participate in regular competitions, tournaments, or leagues, providing opportunities for competitive play.

123.    Coaches, who may be volunteers (often parents) or paid professionals, provide training, instruction, and guidance to the young athletes.

124.    Beyond athletic skills, YSOs are supposed to instill values such as teamwork, fair play, respect, and discipline in young participants.

125.    These organizations often serve as important community entities, bringing together children and families from various backgrounds and fostering community spirit and involvement.

126.    During the actions and inactions complained of, FFF was a YSO operating in South Carolina whose athletes were primarily comprised of children and young adults.

127.    YSO's (including FFF) are responsible for ensuring the safety and wellbeing of their participants, which includes providing safe coaches, monitoring those coaches, creating policies and procedures to protect its participants, having safe facilities, and adhering to safe sport participant protection guidelines.

128.    YSOs  must comply with various regulations and guidelines, especially if they are affiliated with larger governing sports bodies at the state, national, or international levels.

129.    Many YSOs strive to be inclusive and accessible, offering opportunities for participation regardless of a child's skill level, physical ability, or socioeconomic background.

130.    YSOs play a vital role in the physical, social, and emotional development of children and adolescents.

131.    Providing a platform for young people to engage in physical activity, learn new skills, make friends, and develop a lifelong appreciation for sports and healthy living.

132.    When a YSO fails in its mission to provide a safe place for children to interact, by, for example, hiring or retaining a predatory coach, the resulting  harm is foreseeable but catastrophic.

133.    In the case at bar, both USFS (the NGB) and FFF (the YSO) failed Plaintiff Jane Roe #1 and Jane Doe #4 and created an atmosphere allowing Coach Mark Cockerell to engage in sexual misconduct, emotional abuse, and exploitation of Jane Doe #4.

## SCFSC PROMOTED A KNOWN PREDATOR AND HIS EMPLOYER INSTEAD OF PROTECTING CHILDREN

134.    SCFSC was formerly known as Palmetto Skate club.

135.    SCFSC promotes FFF coaches on its website.

136.    SCFSC promotes the FFF rink on its website.

137.    Upon information and belief, SCFSC promoted Cockerell as a figure skating coach to minor athletes even though its president, Angi Grant, had  received credible allegations that Cockerell had engaged in  sexual misconduct and/or emotional abuse of minors.

138.    Angi Grant is the president of SCFSC.

139.    By 2020, Angi Grant knew of complaints by young skaters, family members of young skaters and/or witnesses against Mark Cockerell.

140.    Though Angi Grant was aware of troubling allegations against Mark Cockerell and knew that these types of complaints were indicative of an unqualified and dangerous coach, Grant actively conspired with Mark Cockerell and others to  eliminate any threats to Mark Cockerell by those making complaints against him.

141.    One example of Angi Grant assisting Mark Cockerell in overcoming complaints against him and being allowed to continue coaching minors at the FFF rink is Angi Grant assisting Cockerell with complaints made against him with SafeSport in 2020.

142.    This same assistance to Mark Cockerell by Angi Grant also placed her on notice of all complaints or allegations made against Cockerell.

143.     As president of SCFS, Angi Grant's actions in protecting Mark Cockerell were at odds with her responsibility to protect the children and young participants in Figure skating at FFF.

## U.S. CENTER FOR SAFESPORT'S ROLE IN PROTECTING MINORS AND YOUNG ADULTS PARTICIPATING IN YSOs

144.    The U.S. Center for SafeSport (hereinafter, "The Center") is an independent, nonprofit organization based in the United States that plays a pivotal role in ensuring the safety and well-being of athletes, particularly within the Olympic and Paralympic movements.

145.    Its establishment was driven by recognition that children needed protection from abuse in sports, including sexual, physical, and emotional misconduct.

146.    The Center develops and implements comprehensive training and education programs for athletes, coaches, administrators, and others involved in sports.

147.    These programs focus on abuse prevention, recognizing the signs of abuse, and promoting a safe and respectful sporting environment.

148.    The Center is responsible for creating policies and guidelines to safeguard athletes from abuse.

149.    These policies are designed to set standards for conduct, establish safety protocols, and create a framework for reporting and responding to allegations of abuse.

150.    The Center has the authority to investigate allegations of abuse within the U.S. Olympic and Paralympic sports organizations.

151.    The Center can take disciplinary actions, including banning coaches or other individuals from the sport, based on the findings of particular  investigations.

152.    The Center provides a safe and confidential platform for athletes, coaches, and others to report incidents of abuse or misconduct.

153.    The Center is supposed to ensure that these reports are handled appropriately and investigated thoroughly.

154.    The Center offers support services to individuals affected by abuse in sports.

155.    This support can include counseling, legal assistance, and other forms of support

156.    Beyond its investigative and regulatory roles, the Center advocates for a culture change within sports organizations, promoting environments where athletes' safety and well-being are paramount.

157.    The Center works closely with various sports organizations, including national governing bodies, to ensure the implementation of SafeSport policies and practices across all levels of sports.

158.    By fulfilling these roles, the Center aims to address the issues of abuse and misconduct in sports, ensuring a safer, more respectful, and inclusive environment for athletes of all ages and levels.

159.    The Center plays a crucial role in aiding U.S. Figure Skating and Figure Skating YSOs.

160.    The Center has mandatory training programs for coaches, officials, and athletes.

161.    This training focuses on recognizing, reducing, and responding to signs of sexual misconduct.

162.    The Center also provides educational resources for parents and athletes to create a more informed community.

163.    The Center requires background checks for coaches, officials, and anyone who has regular contact with athletes. This is an essential step in ensuring a safe environment for athletes.

164.    The Center provides a platform for reporting abuse and misconduct.

165.    The Center is responsible for investigating reports of abuse within the U.S. figure skating community and has the authority to impose sanctions or take other corrective actions.

166.    The Center is supposed to advocate for athlete safety and provides support services for victims of abuse.

167.    The Center collaborates with USFS to ensure compliance with safety policies.

168.    The Center also monitors the implementation of child safety and athlete participant policies across all levels of the sport.

169.    Beyond enforcing policies, the Center aims to foster a culture within figure skating that prioritizes athlete well-being, respect, and safety.

170.    By performing these functions, the Center plays a pivotal role in ensuring that figure skating environments are safe and healthy for all participants, particularly young athletes.

171.    Upon information and belief, The Center has received multiple complaints against Mark Cockerell since 2017.

172.    Upon information and belief, The Center has received complaint(s) against Angi Grant since 2022.

173.    In order for the Center to make findings of fact or identify abusers of children, the family of the child must agree to allow them to be identified.

174.    This requirement that The Center be allowed to identify minors by name has a chilling effect on the reporting and continued prosecution of claims by the Center for SafeSport.

## THE COLLABORATION OF U.S. CENTER FOR SAFESPORT, USFS, FFF AND SCFSC

175.    The Center, USFS, FFF, SCFSC and Grant are supposed to be collaborative partners in ensuring the safety of minor age and young adult figure skaters.

176.    The Center is a repository of information on prospective and already certified coaches.

177.    If the Center receives a complaint on a coach, it supposed to investigate that coach or do something to substantiate or verify any potential complaints of harm to a participant in U.S. Figure Skating by a coach.

178.    The Center is then able to work with USFS, FFF or SCFSC in verifying whether a coach has received complaints.

179.    If the Center has information on a coach that may be indicative of potential harm to children, it should be shared with a certifying organization (here, USFS).

180.    USFS, FFF and SCFSC must work with The Center in a collaborative effort to protect children and young adults.

181.    USFS uses information from the Center as part of its process in certifying coaches.

182.    A coach who has credible allegations of sexual misconduct or exploitation of a child or young adult against them should not be certified.

183.    This USFS certification process serves as a representation to the public that a particular coach has been vetted and passed several standards to receive a certification.

184.    FFF relies on USFS for the certification of a coach.

185.    Nevertheless, FFF is also independently responsible for the appropriate hiring, training, and retention of employees, including continuous monitoring.

186.    SCFSC should not suggest, promote  or recommend coaches on its website when it has knowledge of credible allegations of sexual misconduct or emotional abuse against them.

187.    If USFS fails to properly implement its certification process or notify organizations of a predatory or abusive coach, or FFF fails in the hiring (which includes working with USFS and The Center) monitoring or supervision of a coach, or SCFSC promotes predatory and abusive coaches to skaters in its organization and to the public at large, these actions are likely to result in harm to a minor or young adult.

188.    That is what happened in this case.

189.    The Defendant USFS failed in its certification and oversight  of Cockerell, and FFF failed in its hiring, supervision, training, monitoring, retention, and implementation of its policies and procedures, and SCFSC and Grant by protecting a predatory and abusive coach, and further, in promoting said coach to unknowing skaters. resulting in irreparable harm to  Jane Doe #4.

190.    Even if The Center had  never been notified of any issues with Cockerell, USFS, FFF, SCFSC and Grant breached the center policies in allowing an environment which facilitated and allowed Plaintiff Jane Doe #4 to be subjected to inappropriate interaction with Cockerell, inappropriate touching and fondling, and emotional abuse.

## **GROOMING**

191.    "Grooming" refers to the process used by predators to manipulate, gain trust, and establish control over their intended victims for abusive purposes, often leading to sexual abuse or exploitation.

192.    This behavior is particularly concerning when it involves children or vulnerable individuals.

193.    The grooming process typically involves a predator and potential victim.

194.    The predator identifies a potential victim.

195.    This choice may be based on the victim's perceived vulnerability, such as emotional neediness, isolation, or low self-esteem.

196.    The predator establishes a relationship and gains the victim's trust.

197.    This can be done through attention, affection, kindness, or by fulfilling their emotional or material needs.

198.    In the case of child grooming, this often involves befriending the child's family to gain access to the child.

199.    The predator identifies and exploits a need or void in the victim's life.

200.    The predator  might position themselves as a mentor, a protector, a benefactor, or even a romantic interest.

201.    Gradually, the predator works to isolate the victim from others, such as friends and family, who might protect them or notice the abusive behavior.

202.    This isolation further increases the victim's dependency on the abuser.

203.    Once a degree of isolation and trust is achieved, the predator may begin to introduce sexual content or behavior into the relationship, often gradually desensitizing the victim.

204.    The predator may use secrecy, blame, or even threats to keep the victim silent about the nature of the relationship.

205.    This control can be psychological, emotional, and sometimes physical.

206.    The final stage is the abuse or exploitation of the victim, which can be sexual, emotional, and/or physical.

207.    Grooming can occur in various settings, including in-person interactions, as well as through digital means such as social media, online gaming, and messaging apps.

208.    Predators can be adults or even older youths, and they may be strangers, acquaintances, or individuals in positions of authority and trust, such as coaches, teachers, or family members.

209.    Understanding and recognizing the signs of grooming is crucial for the prevention of abuse.

210.    Education on this topic is vital for parents, educators, and anyone who works with children or vulnerable populations, as it can help them identify and intervene in potentially abusive situations.

211.    For several decades, YSOs and NGBs have acknowledged and been well-aware of the threat of grooming, particularly among adults who interact with the children served by a YSO.

212.    FFF, USFS, SCFSC and Grant were aware of the risk of grooming and/or abuse by Cockerell at different times, including at times of certification,  at time of hire, monitoring, supervision and at time of actual knowledge of inappropriate conduct by Cockerell.

**IMBALANCE OF POWER OF COACHES IN YSOs CAN LEAD TO ABUSE**

213.    An imbalance of power between coaches and athletes in YSOs can create an environment that may allow for the emotional or sexual abuse of children and young adults..

214.    This imbalance arises from the inherent authority, trust, and influence that coaches have over young athletes, and can be exploited by those with malicious intent.

215.    Coaches often hold significant authority over young athletes, including decisions about their playing time, position, and progress within the sport.

216.    This authority can be misused to coerce or manipulate children or young adults into complying with inappropriate demands.

217.    Children and young adults typically place a great deal of trust in coaches, viewing them as mentors, role models, and authority figures.

218.    Abusive coaches can exploit this trust to create a secretive, compliant environment.

219.    Children participating in YSOs may depend on their coaches for their athletic success and opportunities.

220.    This dependency can make them vulnerable to exploitation, as they may fear that speaking out could jeopardize their sports career or relationships.

221.    Coaches can isolate athletes from their peers and family, often under the guise of special attention or private coaching.

222.    This isolation can be used to prevent others from witnessing the abuse or the child from seeking help.

223.    Coaches can engage in grooming behaviors, building a seemingly trusting relationship with the child and possibly the child's family, to gain their confidence and manipulate the situation to their advantage.

224.    The power dynamic can allow coaches to intimidate athletes into silence, using threats of repercussions on their sports career or by manipulating their perception of what is acceptable behavior.

225.    In some YSOs, there may be inadequate supervision or oversight of coaches, providing opportunities for abuse to occur without detection.

226.    A culture that overly emphasizes winning and success in sports can contribute to a power imbalance, where athletes feel they must tolerate inappropriate behavior to succeed.

227.    The power held by the coach can lead to underreporting of abuse.

228.    YSO participants  might fear not being believed, or they might not recognize the behavior as abusive due to the trust and authority invested in the coach.

229.    Without proper education and training about appropriate coach-athlete boundaries and the signs of abuse, both athletes and coaches may not recognize or report abusive dynamics.

230.    To combat these issues, it is crucial for YSOs like FFF to implement stringent policies, offer education on appropriate boundaries, ensure proper oversight and reporting mechanisms, and foster a culture where athletes feel safe and empowered to speak out.

## DEFENDANTS NOTICE OF INAPPROATE ACTIONS BY COCKERELL BEFORE ANY INTERACTION WITH JANE ROE #1 AND JANE DOE #4.

231.    USFS knew that Mark Cockerell had been engaging in inappropriate conduct with minor athletes since 1990-1991.

232.    Marck Cockerell was located in Colorado Springs in the early 90's and interacting with minor athlete female skaters.

233.    His improper conduct and potential sexual relationships with minor athletes in the early 90's was known by USFS at that time.

234.    This type of knowledge by USFS for at least three decades should have caused them to disassociate with Cockerell, never certify him as a coach and notify anyone that contacted them of his improper conduct with minor athletes.

235.    FFF hired Mark Cockerell in 2016 in Irmo South Carolina.

236.    FFF had employees and agents who witnessed Cockerell's interaction with minor athletes on a daily basis.

237.    Cockerell was acting in inappropriate ways with minor athletes at the FFF rink since he began coaching at that rink.

238.    FFF had actual knowledge of Cockerell's inappropriate physical contact and emotional abuse of minor athletes in 2016 or 2017 because it was in plain sight of such FFF employees.

239.    SCFSC was formerly Palmetto Skate Club.

240.    SCFSC and Grant were acutely aware of all things going on at the FFF rink.

241.    Angi Grant as president of the SPFSC knew of Cockerell's improper interactions with minor athletes beginning, upon information and belief, in 2017.

242.    Upon information and belief, Grant was present at the rink and witnessed Cockerel's interactions with minor athletes that were inappropriate from 2017 forward.

243.    Grant and SPFSC have been aware of complaints by minor athletes or family members since at least 2020.

244.    Grant and SCFSC have been aware of safe sport complaints against Cockerell since 2020.

245.    The notice of each of defendants of Cockerell's improper actions by 2016 or 2017 should have caused them to take such action to cause Cockerell to be separated from the sport of figure skating and protecting multiple minor athletes from his egregious misconduct.

246.     But for the actions of Defendants, Jane Roe #1 and Jane Doe #4 do not suffer harm at the hands of Mark Cockerell.

## JANE DOE #4'S INTERACTIONS WITH MARK COCKERELL

247.     Jane Doe #4 met Mark Cockerell in 2020 when she was Twelve (12) years old.

248.     When Jane Doe #4 met Cockerell, she was already an experienced skater.

249.     Cockerell became her primary coach while Jane Doe #4 was attempting to progress in the sport of figure skating.

250.     At the time of he began coaching Jane Doe # 4, Defendants USFS, FFF, SCFSC and Grant knew that credible abuse (either sexual or emotional) allegations had been made against Cockerell.

251.     Yet, no Defendant precluded him from interacting with minor athletes, and specifically Jane Doe #4, in his capacity as a coach.

252.     After he began coaching Jane Doe #4, Cockerell began to make suggestive and inappropriate comments to her outside of her mother's (Jane Roe #1) earshot.

253.     Cockerell made inappropriate and sexual comments about the bodies of other minor female skaters to Jane Doe #4.

254.     Cockerell inappropriately touched Jane Doe #4 in ways that constitute sexual assault.

255.     He would place his arm around her in a way that positioned his fingers on different parts of her body.

256.     Cockerell touched the plaintiff at the top of her butt.

257.     On at least one occasion, the Defendant Mark Cockerell grabbed the plaintiff's breast while she was falling.

258.    The mother of Jane Doe #4, Jane Roe #1, accompanied her daughter to the rink for her lessons.

259.    Mark Cockerell knew he was being watched by Jane Roe #1 while interacting with her daughter and would touch Jane Doe #4 inappropriately while catching her or "teaching" her.

260.    These actions by Cockerell were intentional so that he could blame any complaint of improper touching on "coaching".

261.    In the beginning of Jane Doe #4 taking lessons with Mark Cockerell, he would call Jane Roe #1 regularly to complain about the rink and its management and the unfair treatment he was getting from the judges at competitions.

262.    Cockerell told Jane Roe #1 that he needed her help since he was being blacklisted at competitions and needed Jane Roe#1's help to change it.

263.    It is now apparent that Cockerell was trying to build some kind of trust with Jane Roe #1 to facilitate his abuse of her child.

264.    Cockerell was disguising his inappropriate and disturbing coaching under the guise of lessons to hide his actions from Jane Roe #1.

265.    He would say inappropriate comments to Jane Doe #4 out of earshot of Jane Roe #1 so Cockerell could maintain deniability.

266.    One example of an inappropriate comment was Cockerell saying that "{Minor's name} had the best butt of all the skaters"

267.    Cockerell also told a skater with an eating disorder that she looked great and should not put on any more weight.

268.    These are all the actions of a practiced and cunning predator.

269.    Jane Doe #4 never responded to these perverse communications by a man more than forty years older than her.

270.    In July 2020, Cockerell asked Jane Roe #1  for a letter of support for a safe sport issue he was having with another coach at the FFF rink.

271.    Jane Roe #1 felt forced to write a letter of support because she  didn't want to cause any conflict.

272.    Jane Roe #1 and her daughter  had seen how those who were not in Mark's "good graces" were being treated by SCFSC and  the club president Angi Grant.

273.    Jane Roe #1 simply wanted her daughter to skate and keep her family out of political issues at the rink  and keep their heads down.

274.    In October/November 2020, Jane Doe #4   (Twelve years old at the time) approached Cockerell  about the costumes for a group number for a Christmas Skating Show because Mark had picked out a white leotard that was see through for Jane Doe #4.

275.    Jane Doe #4 felt uncomfortable as a twelve-year-old wearing a see-through outfit.

276.    After Jane Doe #4 approached Cockerell about her uncomfortableness with the outfit, Mark yelled at her "your such a spoiled kid that you think you can comment about costumes that I chose.  In my day those decisions were for the adults only.  I don't know how you can be so disrespectful to me"

277.    Jane Roe #1 was standing around the corner and heard the entire interaction and came around and told Cockerell not to speak with her  daughter in that manor.

278.    Jane Doe #4 was crying due this type of action by Cockerell.

279.    This was just one example of Cockerell emotionally abusing his students (and this one example involved Jane Doe #4).

280.    This  type of thing went on with minor athletes all day, every day in sight of FFF employees and members of SCFSC.

281.    Jane Roe #1 had begun to notice that Cockerell was putting his hand around Jane Doe #4's waist at the rink with his hand resting on the top of her butt.

282.    Jane Roe #1 and her daughter discussed tactics to avoid Mark's physical contact with Jane Doe #4.

283.    Jane Doe #4 had reported that Cockerell was very "touchy feely".

284.    In Spring 2022, Jane Roe #1 called the Manager of the FFF rink and informed her that Jane Roe #1 was filing a safe sport complaint against Mark and Angi Grant.

285.    Jane Roe #1 also told the manager of the FFF rink about the inappropriate comments made by Mark to her daughter and other skaters at the rink.

286.    Other skating Parents came forward and complained to the Rink about Mark.

287.    The FFF rink was told about Cockerell's inappropriate behavior and multiple safe sport complaints about Mark.

288.    Jane Roe #1 also shared with the manager of the FFF rink that Cockerell had married one of his former skaters immediately after she turned 18.

289.    Jane Roe #1 told the manger of the FFF rink that Cockerell was grooming students and emotionally abusing them.

290.    The manager of the FFF rink intimated that Angi Grant of SCFSC had told her differently and the manger chose to believe Angi Grant and keep Mark working at the rink.

291.    Jane Roe #1 then spoke with USFS and filed a complaint about Mark's treatment and about the SCFSC Club president Angi Grant supporting Mark.

292.    Jane Roe #1 also filed safe sport complaint in July 2022.

293.    The Center for Safe sport contacted Jane Roe #1 in fall of 2022 and wanted her to name her daughter on the complaint so they could act.

294.    She advised the center that she did not feel she could divulge her daughter's name publicly.

295.    Someone from the Center told Jane Roe #1 that there were complaints about Cockerell that went back several years, yet they could not act unless someone was willing to be publicly named as the complainant.

296.    Jane Roe #1 and Jane Doe #4 quit going to the FFF rink.

297.    During the time that Cockerell was coaching Jane Doe #4, Defendants USFS, FFF and SCFSC should have protected minor athletes.

298.    The Defnednats should have had policies, procedures, rules, regulations, and guidelines on appropriate conduct between an adult coach and a minor.

299.    The Defendants should have had proper reporting mechanisms in place.

300.    The Defendants should have taken a position that all complaints against an adult coach are deemed valid until found not valid.

301.    The Defendants should have prioritized a culture of safety for minor athletes.

302.    The Defendants should have had proper systems in place for monitoring or supervising coaching interactions with minors.

303.    During all times that Jane Doe #4 was a student of Mark Cockerell, she was a member of USFS and a paying athlete of FFF and SCFSC.

304.    During her time as an athlete at FFF and a member of SCFSC, Plaintiff Jane Doe # 4 observed Cockerell inappropriately interacting with, kissing, hugging, and touching other minor athletes.

305.    This behavior was normalized in the rink and no other adult member ever intervened to prevent Cockerell's inappropriate interactions with minor athletes.

306.    The Defendants' improper actions with Jane Doe #4 enunciated above caused her permanent emotional damages and harm

### BREACHES OF DUTIES BY DEFENDANTS

**307.**    USFS, FFF SCFSC, Grant and Cockerell had duties to protect Jane Doe #4 from sexual misconduct, emotional abuse, and exploitation.

**308.**    USFS was a NGB that certified Cockerell.

**309.**    USFS was responsible for vetting Cockerell prior to certifying him as a coach, including investigating complaints that had previously been made against him with the NGB.

**310.**    USFS also had a duty to ensure that all its certified coaches were trained properly, were provided policies and procedures of proper interaction with minors and it protected minor members of USFS from predatory and abusive coaches.

**311.**    USFS is supposed to have a repository of all complaints against coaches.

**312.**    Upon information and belief, prior to coming to Irmo, Cockerell was the subject of complaints by other athletes alleging sexual misconduct or emotional abuse for at least two decades.

**313.**    At all times relevant, Cockerell has been an adult male and decades older than his victims.

**314.**    Upon information and belief, his maltreatment and abuse did not begin in Irmo, South Carolina.

**315.**    Upon information and belief, Cockerell had a sexual relationship with a sixteen-year-old minor in Colardo Springs Colorado in the early 1990's when he was more than ten years her senior.

**316.**    Cockerell has coached at various locations, including Bakersfield, California, Quad Cities, Iowa, Knoxville, Tennessee, Clearwater, Florida and Wooster, Ohio.

**317.**    Upon information and belief, there was more than one person who had complaints about Cockerell touching them inappropriately in Bakersfield, California, Quad Cities, Iowa, Knoxville, Tennessee, Clearwater, Florida and/or Wooster, Ohio.

318.    Upon information and belief, Cockerell had been reported to USFS on multiple occasions,

but USFS failed to act upon these complaints, disregarding these complaints in favor of a revered coach who was a major figurehead in the sport.

319.     Upon information and belief, USFS also failed to report the behaviors of Cockerell to other entities when asked about any such complaints with USFS.

320.     FFF had a duty to appropriately vet coaches who would foreseeably interact with minor athlete

321.     FFF had a duty to prevent one-on-one interaction between an adult coach and a minor athlete.

322.     FFF had a duty to train its coaching staff, including those who would come into close contact with Cockerell, about signs, patterns, and behaviors indicative of predatory behavior, as well as the duty to report all allegations of inappropriate conduct between and adult coach and an athlete.

**323.**     FFF had a duty to protect Jane Doe #4 from the actions of Cockerell.

**324.**     Cockerell's actions were open and apparent to other FFF coaches and other students.

**325.**     SCFSC and their president Angi Grant had actual knowledge of complaints against Cockerell of inappropriate actions with athletes.

**326.**     Angi Grant as president of USFS had a duty and obligation to contact other skating clubs where Cockerell was a coach and inquire on allegations in those specific locations.

**327.**     SCFSC and their president Angi Grant  knew or should have known  that Mark Cockerell has sexually abused or emotionally abused children.

**328.**     SCFSC's President, Angi Grant, is a lawyer and worked on behalf of Cockerell to defend him against allegations made with Safe Sport.

**329.**     SCFSC and its president Angi Grant were complicit in protecting Cockerell despite actual knowledge of credible allegations against him.

**330.**     Since  Cockerell had multiple complaints against him prior to coming to the FFF Rink in Irmo and while at the FFF rink, if a competent investigation had been performed by USFS, FFF, SCFSC, or Grant, then his prior bad acts should have been discovered.

**331.** USFS, FFF, SCFSC, Grant and Cockerell failed to protect Jane Doe #4 from harm, failed to supervise and monitor Cockerell, failed to report Cockerell's inappropriate conduct with minor athletes, failed to train their employees, agents, and those responsible for oversight and leadership to report coaches acting inappropriately with minor children, and failed to appropriately vet and evaluate potential coaches who would foreseeably interact with minor children.

**332.** The Defendant's actions and/or inactions led to harm and permanent injuries to Plaintiff Jane Doe # 4.

## FOR A FIRST CAUSE OF ACTION
### AS TO DEFENDANT COCKERELL
(Assault and Battery)

333. Plaintiffs reincorporate and reallege the above paragraphs herein verbatim.

334. Cockerell threatened and  intended to harm  Plaintiff Jane Doe #4 (assault).

335. Cockerell inappropriately touched and violated Plaintiff Jane Doe #4 (battery).

336. As a direct and proximate result of Defendant Cockerell's  actions outlined above, Plaintiff  Jane Doe #4 suffered damages.

337. Plaintiff Jane Doe #4 will likely have to undergo medical treatment, including intense psychiatric/counseling and  therapy for the remainder of her life.

338. As a direct and proximate result of the assault and battery perpetrated on the Plaintiff Jane Doe #4 by Defendant Cockerell, the Plaintiff Jane Doe #4 has suffered and will continue to suffer damages and is entitled to judgment against Defendant Cockerell for actual and compensatory damages,  punitive damages, and such other relief in law and equity as may be determined by a jury at the trial of this action.

## FOR A SECOND CAUSE OF ACTION
(Negligence/Recklessness/Willful and Wanton Conduct)
### AS TO DEFENDANTS USFS, FFF, SCFSC and Grant

339. Plaintiffs reincorporate and reallege the above paragraphs herein verbatim.

340.    As alleged above, Defendant Cockerell committed sexual misconduct, emotionally abused and exploited Plaintiff Jane Doe #4.

341.    As alleged above, Defendants USFS, FFF, SCFSC and Grant  had a duty to protect Plaintiff from foreseeable harm.

342.    At all relevant times, Defendants USFS, FFF, SCFSC and Grant  knew of ways to mitigate the risk of sexual misconduct and emotional abuse to children and young adults by coaches and other authority figures in the United States Figure Skating community.

343.    USFS had a duty to certify coaches in an appropriate manner.

344.    FFF had a duty to appropriately assess whether a coach met criteria for hiring.

345.    SCFSC and Grant  had a duty to protect children and young adults form coaches it knew had credible allegations of abuse and inappropriate conduct against them

346.    USFS, FFF and SCFSC had a duty to promulgate policies and procedures to protect children from predatory and abusive coaches.

347.    USFS, FFF, SCFSC and Grant  had a duty to monitor and supervise coaches and report inappropriate conduct to authorities and skating rinks where any such coach was employed.

348.    USFS, FFF and SCFSC had a duty to appropriately train employees, representatives, officers and directors about its policies and procedures related to protecting minor athletes including against the foreseeable threat of predatory and abusive adults.

349.    The duties to Jane Doe #4 by USFS, FFF and SCFSC included a duty to prohibit or prevent one-on-one interaction with coaches and students with no other adults present.

350.    Upon information and belief, Cockerell had sexually abused, emotionally abused, or exploited multiple minor victims at various skating rinks around the country.

351.    USFS should have been aware of such transgressions and advised The Center and FFF of each such transgressions.

352.    FFF had a duty to hire, supervise and monitor Cockerell in a reasonable manner.

353.    SCFSC and Grant had a duty to protect children from known predatory and abusive coaches when it had knowledge about a coach's abusive or inappropriate behavior.

354.    USFS, FFF, SCFSC and Grant knew that Cockerell would be around vulnerable children and young adults.

355.    USFS, FFF, SCFSC and Grant knew or should have known that if they did not create a culture of safety and protect the vulnerable minor athlete population from abusive like Cockerell, the children and young adults could be harmed.

356.    As a result of the actions and inactions of USFS, FFF,SCFSC, and Grant, the Plaintiff Jane Doe #4 was subjected to pervasive and inappropriate emotional abuse and inappropriate conduct.

357.    Defendants USFS, FFF, SCFSC and Grant breached their duties to Plaintiff Jane Doe #4 in multiple ways

358.    Defendants USFS, FFF, SCFSC and Grant's failure to create proper policies and procedures, create a culture of safety for young skating participants, properly investigate, certify, hire, monitor, and supervise Cockerell, led to Plaintiff being exploited and abused by him.

359.    Defendants USFS, FFF, SCFSC and Grant's failures as indicated herein amount to the total absence of care.

360.    As a direct and proximate result of the negligent, grossly negligent, reckless, willful, and wanton actions and inactions of USFS, FFF, SCFSC and Grant and their agents and/or employees, the Plaintiff Jane Doe #4 has suffered and will continue to suffer damages and Plaintiff is entitled to judgment against Defendants USFS, FFF, SCFSC and Grant for actual and compensatory damage, punitive damages (except against any non-profit entity), and such other relief in law or equity as may be determined by a jury.

## FOR A THIRD CAUSE OF ACTION
### AS TO ALL DEFENDANTS
(Civil Conspiracy)

361.    Plaintiffs reallege and reincorporate the above paragraphs herein verbatim.

362.    Prior to the grooming, exploitation, and abuse of Plaintiff, upon information and belief, Defendants knew or should have known about Defendant Cockerell's history of exploitation or abuse of other minors at different rinks in the United States, including FFF.

363.    Defendants USFS, FFF and SCFSC knew or reasonably should have known that allowing a sexual predator to be certified as a skating coach, to be hired as a skating director at a rink filled with vulnerable children and young adults and SCFSC to promote a known predatory and abusive coach to members of USFS and participants at FFF would cause harm to a vulnerable population.

364.    Despite this prior knowledge of Defendant Cockerell's sexual proclivities with minors and/or young adults or the ability to know of such proclivities while at FFF, Defendants facilitated Cockerell's  unfettered access to children and young adults.

365.    Upon information and belief, Defendants undertook this effort to hide or otherwise prevent Cockerell from being detected because he was a revered athlete and coach within the sport and Defendants not only feared the fallout from such a discovery but also profited from Defendant Cockerell and thus had a financial incentive to protect Defendant Cockerell from discovery.

366.    This access constitutes conspiring between all Defendants culminating in the sexual abuse, emotional abuse  and exploitation of Plaintiff Jane Doe #4 by Cockerell.

367.    The predicate acts of all Defendants necessary to constitute a conspiracy includes all Defendant's complicity with one another to prohibit others from finding out about Cockerell's abuse of previous minors before Jane Doe #4, Defendants USFS and Cockerell's failure  to report Defendant Cockerell's conduct at previous skating rink locations; SCFSC and FFF's failure to

report the conduct of Cockerell at the FFF rink when it was known by Angi Grant and manager of the FFF rink, SCFSC and Angi Grant working in tandem to protect Cockerell from known complaints to SCGSC and safe sport, and all Defendants  helping to facilitate the hiding of Cockerell's wrongful acts at different rinks including FFF and other acts or omissions that may be discovered through the discovery process of this action.

368.    As a direct and proximate result of the civil conspiracy between employees and/or agents of USFS, FFF, SCFSC, Grant  and Cockerell, the Plaintiff has suffered and will continue to suffer damages and Plaintiff Jane Doe #4 is  entitled to judgment against Defendants USFS, FFF, SCFSC, Grant  and Cockerell for actual and compensatory damages, and punitive damages (except against any non-profit entity) , and such other damages in law or equity as may be determined at a trial of this matter.

## FOR A FOURTH  CAUSE OF ACTION
### AS TO ALL DEFENDANTS
(Outrage/Intentional or Reckless Infliction of Emotional Distress)

369.    Plaintiffs reallege and reincorporate all above paragraphs herein verbatim.

370.    Defendants recklessly inflicted severe emotional distress on Plaintiff by virtue of their actions and it was certain or substantially certain that such distress could result from Defendants' conduct.

371.    Defendants' conduct was extreme and outrageous as to exceed all possible bounds of decency and is intolerable in a civilized community.

372.    Defendants' actions caused Plaintiff emotional distress.

373.    The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to endure it and  this distress manifested itself in physical symptoms.

374.     The emotional distress caused by actions and inactions of all Defendants, includes, but is not limited to, medical problems, emotional issues, mental anguish, and behaviors that are capable of objective diagnosis.

375.     As a direct and proximate result of the intentional and/or reckless infliction of emotional distress on Plaintiff, she has suffered damages.

376.     As a direct and proximate result of the intentional or reckless infliction of emotional distress by USFS, FFF, SCFSC, Grant  and Cockerell, the Plaintiff  Jane Doe #4 has suffered and will continue to suffer damages and Plaintiff is  entitled to judgment against Defendants USFS, FFF, SCFSC, Grant    and Cockerell for actual and compensatory damages, punitive damages (except against any non-profit entity), and such additional relief in law and equity as may be determined by a trial of this matter

### FOR A FIFTH CAUSE OF ACTION
### AS TO ALL DEFENDANTS
(Violation of 18 U.S.C. § 2255 – As to Jane Doe #3)

**377.**     Plaintiffs reallege and reincorporates all above paragraphs herein verbatim.

378.     Under 18 U.S..C. 2255, any person who, while a minor, was a victim of a violation of sections 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423  and who suffers personal injury as a result of such violation, , may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

379.     Under 18 U.S.C. 2243,  whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who—

     a.    has attained the age of 12 years but has not attained the age of 16 years; and,

     b.    Is at least four years younger than the person so engaging; child between the ages of twelve (12) and fifteen (15) has a cause of action against a person more than four (4) years older than them if they engage in sexual acts.

380.    Defendant Cockerell was over the age of Fifty (50) when he engaged in sexual acts with Plaintiff Jane Doe #4.

381.    Plaintiff Jane Doe #4 was under the age of Sixteen (16) at the time that Defendant Cockerell engaged in sexual acts on her.

382.    As a direct and proximate result of the breach of 18 U.S.C. 2255 and 18 U.S.C. 2243, the Plaintiff Jane Doe #4 has suffered and will continue to suffer damages and Plaintiff Jane Doe #4 is entitled to judgment against Defendants for all actual damages sustained by Plaintiff Jane Doe #4 or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

<u>**FOR A SIXTH CAUSE OF ACTION**</u>
**AS TO DEFENDANTS USFS, FFF and SCFSC**

(Unfair trade practices – violation of S.C. Code Ann. § 39-5-10 *et seq.*)

383.    Plaintiffs reallege and reincorporates all above paragraphs herein verbatim.

384.    The South Carolina Unfair Trade Practices Act ("SCUTPA") declares unlawful "[a]ny unfair methods of competition and unfair or deceptive acts or practices within the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

385.    "Trade and commerce" are defined by the statute as "sale or distribution of any services." S.C. Code Ann. § 39-5-10(b).

386.    Both USFS, FFF and SCFSC are engaged in trade and/or commerce in South Carolina and thus subject to the SCUTPA.

387.    Upon information and belief, both USFS, FFF and SCFSC hold themselves out as safe providers of goods and services that were not harmful to minors or young adults.

388.    Specifically, both USFS, FFF and SCFSC advertising their product to consumers as safe while allowing a predatory/abusive coach to interact with minors is a violation of SCUPTA.

389.    As alleged above, because of actions and inactions of both USFS, FFF and SCFSC, Plaintiff was harmed.

390.    The harm suffered by Plaintiff in this case has occurred in the past and is capable of repetition and therefore a matter of public interest. *See Daisy Outdoor Advertising v. Abbott*, 317 S.C. 14, 451 S.E.2d 394 (1996).

391.    The actual, dangerous, nature of USFS, FFF and SCFSC's actions and inactions directly contradicted the message held out to consumers of a safe environment.

392.    As a direct and proximate result of the breach of SCUPTA by USFS, FFF, and SCFSC, the Plaintiff Jane Doe #4 has suffered and will continue to suffer damages and Plaintiff is entitled to judgment against Defendants USFS, FFF and SCFSC for all actual damages and compensatory damages, trebled, and or attorney's fees and reasonable costs, as well as all other damages in law or equity as may be determined at a trial of this matter.

<u>**FOR A SEVENTH CAUSE OF ACTION**</u>
**AS TO ALL DEFENDANTS**

**(Jane Roe #1's entitlement to a necessaries claim)**

315.    Plaintiffs reallege and reincorporate all above paragraphs herein verbatim.

316.    As a direct and proximate result of the acts and/or omissions described herein, Jane Doe #4 suffered damages, including, but not necessarily limited to, the following:

      a.    Substantial medical expenses that are certain to occur for a significant amount of time, if not for the rest of Jane Doe #4's life;

  b. Substantial life-care expenses that are certain to occur for a significant amount of time, if not for the rest of Jane Doe #4's life;

  c. Substantial injury to Jane Doe #4's psyche and general emotional state; and,

  d. Substantial loss of enjoyment of life.

317. As a direct and proximate result of the acts and/or omissions as described herein, Plaintiff Jane Roe #1 has suffered and will, in the future, suffer damages, including, but not limited to, the following:

  a. Substantial medical expenses that are certain to occur for a significant amount of time, if not for the rest of Jane Doe #4's life;

  b. Substantial life-care expenses that are reasonably certain to occur for a significant amount of time, if not for the rest of Jane Doe #4's life;

  c. Care related to Jane Doe #4's disability that are likely to occur before Jane Doe #4 reaches the age of majority;

  d. The provision of extraordinary medical care to Jane Doe #4; and

  e. The general expense of obtaining resources for Jane Doe #4 before the age of eighteen, including, but not limited to, special assistance and other medical treatment and/or therapies which may alleviate some of Jane Doe #4's suffering which took place due to Defendants' conduct as alleged herein.

  f. The time and expense associated with Jane Roe #1's care of Jane Doe #4 from time missed from work, transportation costs and other assorted expenses.

318. Plaintiff Jane Roe #1 (as the parent of Jane Doe #4) is responsible for the medical bills, medical care, and overall care for her minor child until the age of eighteen.

319. If the Jane Doe #4 is under a disability, she may be required to undergo care for an undetermined length of time after she reaches eighteen years of age.

320. Plaintiff will also suffer other economic damages, including, but not limited to, the provision of extraordinary medical care, life care expenses, transportation costs, counseling services, and special programs for children because of Defendants' actions.

321.    Plaintiff should be awarded all damages flowing from any necessaries claim or any other economic damages they may suffer because of Defendants' actions and/or inactions.

WHEREFORE, Plaintiffs respectfully pray for judgement against Defendants for all actual and punitive damages alleged herein (except against any non-profit entity) , liquidated damages of $150,000 pursuant to 18 U.S.C. 2255, attorney's fees allowable under 18 U.S.C. 2255, costs of this action allowable under 18 U.S.C. 2255, treble damages allowable under SCUPTA  and for such other and further relief as this Honorable Court deems proper and just.

**MCGOWAN, HOOD, FELDER & PHILLIPS, LLC**

s/S. Randall Hood
S. Randall Hood, SC Fed ID 6103
Chad A. McGowan, SC Fed ID 6620
1539 Health Care Drive
Rock Hill, SC 29732
Phone: (803) 327-7800
Facsimile: (803) 324-1483
rhood@mcgowanhood.com
cmcgowan@mcgowanhood.com

**STROM LAW FIRM, LLC**

Bakari T. Sellers, SC Fed ID 11099
Jessica L. Fickling, SC Fed ID 11403
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone:  (803) 252-4800
Facsimile:  (803) 252-4801
Email: bsellers@stromlaw.com
        jfickling@stromlaw.com

February 22, 2024
Rock Hill, South Carolina